**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JASON FERGUSON,**

    Petitioner,                        CASE NO. 2:09-CV-138
                                       JUDGE GRAHAM
v.                                     MAGISTRATE JUDGE ABEL

**TIMOTHY BRUNSMAN, Warden,**

    Respondent.

**REPORT AND RECOMMENDATION**

Petitioner Jason Ferguson, a state prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Magistrate Judge on the petition, respondent's return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**FACTS and PROCEDURAL HISTORY**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On March 23, 2006, appellant was indicted on two counts of aggravated robbery, in violation of R.C. 2911.01, four counts of robbery, in violation of R.C. 2911.02, two counts of kidnapping, in violation of R.C. 2906.01, one count of receiving stolen property, in violation of R.C. 2913.51, one count of carrying a concealed weapon, in violation of R.C. 2923.12, one count of improper handling of firearms, in violation of R.C. 2923.16, and one count of having a weapon while under disability, in violation of R.C. 2923.13. Each of the aggravated robbery, robbery, and kidnapping counts also contained firearm specifications pursuant to R.C. 2941.141 and 2941.145.
>
> The trial court granted appellant's pre-trial motion to sever Counts 1 through 8 of the indictment from Counts 9 through 12 for purposes of trial. On June 18, 2007, the matter came for trial before a jury on Counts 1 through 8 (charging appellant with aggravated robbery,

robbery, and kidnapping).

During its case-in-chief, the state presented the following evidence. Mary Gilbert and her son, Ronshea Gilbert ("Ronshea"), reside at 1099 Lawrence Drive, Columbus. Gilbert sometimes refers to her son as "Boo." (Tr. 64.) On March 6, 2006, Gilbert and Ronshea were at home, and Gilbert's godson, Darby Clark, came over to the house to play video games with Ronshea. Later that day, Vincent Martin, a friend of Ronshea, also came over to the residence.

That evening, Clark and Ronshea were playing a video game when Ronshea received a two-way phone call from appellant and Gilbert's stepdaughter, Keona Alexander. During the phone conversation, appellant told Ronshea about an individual on the west side of town who had a Monte Carlo for sale, and appellant provided Ronshea with an address. After speaking with appellant, Ronshea told his mother he was leaving the house.

Gilbert testified that Clark and Martin remained at the residence with her after Ronshea left the house. Later, Martin was getting ready to leave, but there was a knock at the door. Gilbert went to the door, and someone identifying himself as "Vincent" asked if Ronshea was there. Gilbert stated, "no, he just left. He'll be back in a few minutes." (Tr. 70.) Gilbert did not know anyone named Vincent except her son's friend, Vincent Martin. Gilbert closed the door and phoned Ronshea to ask if he knew of a Vincent, but her son indicated he did not know this individual.

Martin then left the house, and Clark went upstairs to Ronshea's room. Gilbert, who was still downstairs, began playing a video game when she noticed someone had entered the house. Gilbert stated that it is common for her son's friends to enter the house unannounced. This individual asked if "Boo" (Ronshea) was there, and Gilbert said no. (Tr. 73.) Gilbert, who was still playing the video game, thought the person was leaving the house, and she "didn't think anything of it." (Tr. 73.) The individual, however, then put his hand on Gilbert's mouth and stuffed a rag in her mouth.

At trial, Gilbert identified appellant as her assailant, who she also knew as "Chesko." (Tr. 75.) Gilbert had met appellant for the first time a week earlier when he came over to her house with Gilbert's stepdaughter, Alexander, who appellant was dating at the time. Gilbert began punching the assailant, but appellant pulled out a gun and stated, "we can do this the easy way or we can do it the hard

2

way." (Tr. 75.) Appellant then put the gun to Gilbert's head and forced her to stand up and walk toward the kitchen. As Gilbert was walking through the kitchen she looked out the kitchen window and noticed someone standing outside.

Appellant, still holding the rag to Gilbert's mouth, directed her to walk downstairs to the basement. Gilbert, who suffered from knee problems, pointed toward her leg to indicate to appellant that she needed support to go down the stairs. When they reached the basement, appellant tore a t-shirt and tied Gilbert's hands behind her back. Appellant tied another shirt around Gilbert's head. Appellant then ordered Gilbert to lie down on the floor. There was a tire in the basement, and appellant placed the tire over Gilbert's legs. Gilbert testified that the last words appellant stated to her that evening were "Ms. Lady." (Tr. 83.) Gilbert recalled that appellant had called her "Ms. Lady" when they first met a week earlier.

Appellant went upstairs, and Gilbert heard him open the back door and let someone else inside the house. Gilbert then heard these individuals "going up and down stairs, running in and out of the back door several times." (Tr. 82.) She later heard a voice announce "Columbus Police," and Gilbert eventually was able to free her hands and scream for help, prompting a police officer to come downstairs and assist her. (Tr. 85.)

Following the incident, Gilbert discovered that some of her son's money and other property were missing from the residence. Gilbert was subsequently shown a photo array, but she was unable to identify her assailant from the photographs. At trial, Gilbert stated she was positive appellant was her assailant.

Darby Clark, age 19, also testified on behalf of the state regarding the events of March 6, 2006. That evening, Clark was at Gilbert's house playing video games with Ronshea when Ronshea received a phone call. Ronshea indicated he needed to leave to pick something up, and that he would return. After Ronshea left, Martin came over to the house, and Clark and Martin played video games.

Clark later went upstairs to Ronshea's room, while Martin remained downstairs. Clark came downstairs a short time later, and Martin was sitting on a couch. Clark also observed appellant standing in the living room at that time. Clark testified that he immediately recognized appellant that evening. Clark had met appellant on a few prior occasions, and he knew that Ronshea's stepsister was dating

appellant. Martin indicated he was going to leave, so Clark shook his hand. Clark then went back upstairs, while appellant remained downstairs.

About five minutes later, as Clark was using a computer in Ronshea's room, appellant came upstairs and pointed a gun at Clark. Clark described the weapon as a "shotgun-rifle-type" with a scope. (Tr. 152.) Appellant pulled Clark to the ground and told him "a whole bunch of shit like what he was going to do. He was going to tie me up and put a bag over my head." (Tr. 151.) Appellant began asking Clark "where stuff was at." (Tr. 152.)

Appellant took an extension cord and tied Clark's hands behind his back. Appellant then put a pillow over Clark's head. Shortly thereafter, Clark heard another individual inside the house with appellant. Appellant and the other person were pulling drawers out and "[t]hrowing stuff around." (Tr. 153.) Appellant continued asking Clark "where stuff was at." (Tr. 153.) The assailants also took Clark's cell phone from his pocket. After a few minutes, appellant and the other person left, and Clark was able to get his hands untied. Clark exited the house from an upstairs window and ran to a nearby store to phone the police.

Ronshea also testified on behalf of the state about the events of March 6, 2006. After receiving a call from appellant that evening regarding a Monte Carlo, Ronshea drove down the street to pick up a friend. He then drove to the address he had been given by appellant. When he knocked on the door, however, the residents indicated they did not know anything about a car for sale.

Ronshea tried to call appellant back, but appellant's phone was beeping. Ronshea eventually contacted appellant, and appellant asked him how many minutes it would take him to get back home. Ronshea responded he would be there in about five or ten minutes, and appellant stated "okay, cool." (Tr. 196.) Ronshea observed police officers when he returned to his mother's residence. Clark approached him and stated that "his [Ronshea's] sister's boyfriend just came in there and robbed the house and tied him [Clark] up." (Tr. 196.) Ronshea later discovered that his digital camera and $600 were missing from the house.

Ronshea testified that the first time he met appellant was at his sister's residence, and that appellant "tried to intimidate me." (Tr. 207.) Appellant informed Ronshea about "robberies and stuff, he just told me * * * how he would go in there and how he would drive his truck

4

> there * * * [and] how he would like struggle with them and beat them up." (Tr. 208-209.)
>
> Columbus Police Officers James Jude and Keith Abel were dispatched to 1099 Lawrence Avenue on March 6, 2006. When the officers arrived at the location, an individual told them he had escaped from the second floor window; this individual also informed the officers that another person might still be inside the house. The officers entered the house and discovered a woman downstairs with a tire on top of her legs, her hands tied, and a cloth stuffed in her mouth.
>
> Columbus Police Detective Brian Boesch investigated the matter and interviewed various individuals on March 15, 2006. A photo array was prepared and shown to Gilbert. Appellant's picture was photograph No. 5. Gilbert thought three of the pictures, including photograph No. 5, bore a resemblance to her assailant, but she could not narrow it down for a definitive answer. The detective showed the photo array to Clark, who almost immediately picked out appellant's photograph from the array. Ronshea was also shown the photo array, and picked out appellant's photograph.
>
> Following deliberations, the jury returned verdicts finding appellant guilty of aggravated robbery under Count 1, robbery under Count 2, and kidnapping under Count 8. The jury also found appellant guilty of the firearm specifications attached to those counts. The jury found appellant not guilty of robbery under Counts 3, 5, and 6, not guilty of aggravated robbery under Count 4, and not guilty of kidnapping under Count 7. During the sentencing hearing, the prosecution requested a nolle prosequi as to Counts 9, 10, 11, and 12 of the indictment, which the court granted.
>
> The trial court sentenced appellant by entry filed July 26, 2007. The court imposed a sentence of six years as to Count 1, with an additional three-year sentence for the firearm specification. The court imposed a sentence of six years on Count 2, and seven years on Count 8. The court ordered the sentences for Counts 1 and 2 to be served concurrently, and the sentences for Counts 1 and 8 to be served consecutively, for a total of 16 years.

*State v. Ferguson*, 2008 WL 2932005 (Ohio App. 10th Dist. July 31, 2008).  Petitioner filed a timely appeal, in which he raised the following assignments of error:

5

> FIRST ASSIGNMENT OF ERROR: The evidence was legally insufficient to support appellant's convictions for Aggravated Robbery, Robbery, and Kidnapping.
>
> SECOND ASSIGNMENT OF ERROR: The Court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
>
> THIRD ASSIGNMENT OF ERROR: Appellant's convictions were against the manifest weight of the evidence.
>
> FOURTH ASSIGNMENT OF ERROR: The trial court committed reversible error by allowing Ronshea Gilbert to testify to statements allegedly made by appellant regarding other criminal acts in that they were not admissions, not relevant, and where the prejudicial effect far outweighed any probative value.

*See id.* On July 31, 2008, the appellate court affirmed the trial court's judgment. *Id.* Petitioner did not timely appeal. on October 21, 2008, he filed a motion for delayed appeal with the Ohio Supreme Court. *Exhibit 12 to Return of Writ.* On December 3, 2008, the Ohio Supreme Court denied petitioner's motion for delayed appeal. *State v. Ferguson*, 120 Ohio St.3d 1415 (2008).

On February 25, 2009, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Due process violated by insufficient evidence to prove each essential element of charged offenses.
>
> 2. Due process and fair trial denied by other acts testimony.
>
> 3. Petitioner was denied notice of the charges and due process of law by the omission of the necessary mens rea element on the aggravated robbery and robbery charges.

It is the position of the respondent that petitioner's claims are procedurally defaulted and without merit.

6

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the

7

procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

Petitioner properly raised his claims on direct appeal; however, he failed to file a timely appeal of the appellate court's decision to the Ohio Supreme Court, and the Ohio Supreme Court denied his motion for delayed appeal. The United States Court of Appeals for the Sixth Circuit has held that the Ohio Supreme Court's denial of a motion for delayed appeal constitutes a procedural default of the claims raised therein. *See Smith v. State of Ohio*, 463 F.3d 426, 431-32 (6th Cir. 2006), citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Therefore, this Court likewise concludes that petitioner's has waived his claims for federal habeas corpus review.

Petitioner may still obtain review of these claims on the merits if he establishes cause for his procedural default, as well as actual prejudice from this alleged constitutional violation. Petitioner states that his attorney promised to continue his representation of petitioner in the appeal to the Ohio Supreme Court, and "abandoned" him in those proceedings, which resulted in the late filing of his appeal. *See Exhibit 12 to Return of Writ*.[1] However,

> " 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir.2003). Petitioner's *pro se* status or any "ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish

---

[1] In a letter dated August 8, 2008, appellate counsel advised petitioner that the Court of Appeals had rejected his appeal, and that if petitioner wished to file an appeal to the Ohio Supreme Court, he could contact the public defender. *See Exhibit 12 to Return of Writ*.

8

cause to excuse his procedural default." *See Bonilla v. Hurley,* 370 F.3d at 498, citing *Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir.1995).

It is true that the constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000), citing *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986). However, the ineffective assistance of counsel cannot constitute cause if there was no constitutional right to effective counsel in the proceeding in question. The Court of Appeals has held that there is no right to counsel in direct appeal to the Ohio Supreme Court. *See Gulertekin v. Tinnelman-Cooper,* 340 F.3d 415, 425 (6th Cir.2003), citing *Coleman v. Thompson,* 501 U.S. 722, 752-53 (1991); *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) ("[T]he right to counsel extends to the first appeal of right, and no further."); *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir.2005). Thus, any failure by petitioner's attorney to advise him of the time limits and procedures for filing an appeal to the Ohio Supreme Court - which is the failure upon which petitioner relies - does not constitute cause for petitioner's procedural defaults. *See Smith v. Ohio Department of Rehabilitation and Correction,* 331 F.Supp.2d 605, 618 (N.D. Ohio 2004) (counsel's failure to provide timely notification of appellate court's decision rejecting his claims did not constitute cause for procedural default in failing to file a timely appeal to the Ohio Supreme Court) (citations omitted); *Barkley v. Konteh,* 240 F.Supp.2d 708, 713-14 (N.D.Ohio 2002) (same); *Shabazz v. Ohio,* 149 F.3d 1184, unpublished, 1998 WL 384559 (6th Cir. June 18, 1998) (no cause for procedural default where attorney waited over one year to file the notice of appeal) (citations omitted).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one

9

who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision,they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                  s/Mark R. Abel
                                                  United States Magistrate Judge